UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
NOV 12 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

SONNY RAY NABARRETTE §
Petitioner-Applicant §
§
V. §
§ NO:
§
CHARISMA EDGE, Warden §
FCI La Tuna §
Respondent §

### PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241

Comes now Sonny Ray Nabarrette, Petitioner – Applicant (herein after Petitioner) Pro Se, and pursuant to 28 U.S.C §2241, petitions this Honorable Court for a writ of habeas corpus, and in support will show the following:

    1. Petitioner is presently imprisoned at La Tuna Federal Correctional Institution in Anthony, Texas.

    2. Petitioner pled guilty on May 13, 2025 to 18 U.S.C. §922 (G) (1) felon in possession of a firearm.

    3. Petitioner is not attacking the conviction or the manner in which the sentence is carried out.

    4. Petitioner is challenging the manner in which Good Time Credits, First Step Act Credits and Second Chance Credits are applied and in which petitioner's release is determined.

    5. Petitioner was in federal custody between February 6, 2025 and September 04, 2025, was engaged in productive activity, thus pursuant to the FSA Petitioner is entitle to FSA credits.

    6. The case manager at La Tuna has indicated that Petitioner's projected release date is August 30, 2026

7. Felon in possession was improperly charged constituting and overreach due to firearm ownership was not petitioners. Supreme Court has constantly ratified that habeas corpus is the proper vehicle for an unlawful charge.

8. The date provided by the case manager is contrary to the First Step Act (FSA), the Second Chance Act (SCA) and the Bureau of Prisons (BOP) mandate regarding application of Good Time (GT), FSA, SCA and BOP mandate. No SCA credit is being provided at all to petitioner.

9. Habeas Corpus relief is not limited to the immediate release from illegal custody, but is available as well to attack future confinement and obtain future release.

10. It is clear from the language of §2241(c)(3) that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and that the traditional function of the writ is to secure release from illegal custody.

11. The First Step Act of 2018 was passed with the intentions of rectifying disproportionate and racial disparate penalties in federal sentencing. Congress further realized that prolonged imprisonment was not that effective and concerns existed on the effects of incarceration had on employment opportunities of the incarcerated.

The FSA reauthorized the Second Chance Act of 2007 as well as creating and providing incentives to inmates to participate in evidence-based recidivism programs (programming) and productive activity in which prisoners could earn 365 days off their sentence and credits for release to a Residential Reentry Center (RRC) (half-way house) placement. An inmate can earn 15 days for each month in which the inmate programs or is engaged in productive activity, which is applied to the 365 days reduction and the remaining credits applied to the pre-release to a RRC.

The Second Chance Act of 2007 provides an inmate with up to 365 days of RRC and 6 months of home confinement. These credits are applied in addition to the FSA. No SCA Credits is being provided to petitioner.

12. During the past, the BOP has had in place schemes to prolong the imprisonment past a release date to a RRC, to home confinement by the prison or completion of the sentence, thus, resulting in an illegal and improper confinement by the prison.

13. In the memos to prison facilities, dated May 28, 2025 and June 17, 2025, BOP director William K Marshall III, directed in a new policy that prisons must ensure that inmates receive all FSA, Good Time, and SCA credits to which they are entitled. The new policy was implemented to avoid wasting millions of taxpayer dollars, release strain on prison bed space and staffing, and eliminate prolonged and unnecessary burdens on inmates and their families (Exhibit A).

14. Charisma Edge, warden of La Tuna, also issued a directive dated June 19, 2025 advising the inmate population of the same (Exhibit B).

15. Regardless of the new directives by the BOP director and La Tuna Warden, case managers are refusing to provide inmates with the Second Chance credits, thus providing an improper release and improper prolonged imprisonment.

16. Pursuant to Congressional intent and the FSA, Petitioner is entitled to FSA credits since the first month in federal custody.

17. Pursuant to the Supreme Court, the legislative history, Congressional intent, and the FSA, Petitioner is entitled to FSA credits during the period of April 15, 2020 and July 14, 2025, due to the Petitioner's productive activity which consisted of employment within the prison facility.

18. If the case manager, or BOP was to properly apply the FSA to the Petitioner, placement in an RRC should take place on or about March 03, 2026.

## Purpose of 28 U.S.C §2241

19. The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody.

20. Habeas Corpus is available to effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to a conviction by a court or competent jurisdiction.

21. Habeas Corpus is an appropriate remedy for the restoration of an inmate's Good Time, First Step Act and Second Chance Act credits on their sentence, even if their credits will not result in their immediate release, but only in shortening the length of their actual confinement in prison.

22. Habeas Corpus is a Constitutional recognized and protected right under Article I, Section 9, Clause 2, which provides an expeditious (3 to no more than 20 days) remedy to an illegal confinement. 18 U.S.C §2241. Thus, an illegal confinement is not only a Constitutional violation, but a violation of 18 U.S.C §231 and §232, deprivation of rights under color of law, and conspiracy to deprivation of rights under color of law. The fundamental instrument for safeguarding individual freedom against arbitrary and lawless government action. Habeas Corpus is a remedy to a claim of "custody in violation of the Constitution of laws of the United States" 28 U.S.C §2241 (C)(3).

23. Proceedings to enforce a civil right, as in this case is a civil proceeding and proceedings for the punishment of crimes are criminal proceedings. Ex Parte: Tom Tong, 108 US 556 (1883). When there is a criminal prosecution against one, a writ of habeas corpus inquires into the legality of his detention not his conviction or sentence, and is not a proceeding in a prosecution, but a new suit to enforce a civil right. Thus, when a petitioner claims that the constitution gives him the right to his liberty, not withstanding the charge that has been made against him, and he has seeked judicial process

to enforce that right, the proceedings on his part are civil proceedings, not withstanding his object is by means of it, to get released from custody under a criminal prosecution.

24. Because Habeas Corpus under U.S.C §2241 is a constitutional right, a right secured by the constitution, there can be no rule making which would abrogate them, such as regarding exhaustion of administrative remedies. Exhaustion of Administrative Remedies is not required for a petition for habeas corpus, in that this is not action or claim to prison conditions, but an action regarding the unlawful and illegal imprisonment in violation of the Constitution and laws of the United States. Exhaustion is required in prison conditions claims and actions under the Prisoner Litigation Reform Act. To require the exhaustion of administrative remedies in a habeas corpus claim would be to create a rule that abrogates a Constitutional right which is prohibited.

## Conclusion

Petitioner hereby requests this Honorable court to grant the writ or issue an order directing the respondent to show cause why the writ should not be granted, and to properly provide all Good Time, First Step Act and Second Chance Act Credits that Petitioner is entitled to.

September 4, 2025.                                   Respectfully,

Sonny Ray Nabarrette
FCI La Tuna Federal Correctional Institution
PO Box 8000
Anthony, NM 88021

Exhibit A

**U.S. Department of Justice**
**Federal Bureau of Prisons**

FOR IMMEDIATE RELEASE
May 28, 2025

Contact: Office of Public Affairs
202-514-6551

## Federal Bureau of Prisons Issues Directive to Expand Home Confinement, Advance First Step Act

WASHINGTON, DC - The Federal Bureau of Prisons (BOP or Bureau) has announced new guidance from Director William K. Marshall III directing staff to expand the use of home confinement for eligible individuals under the First Step Act (FSA) and Second Chance Act (SCA). The directive is rooted in the principle of smart, fair criminal justice reform—reform that began when President Donald J. Trump disrupted entrenched political paralysis and signed the FSA into law, delivering the most significant overhaul to the federal justice system in a generation.

This latest policy reinforces the Bureau's responsibility to uphold the law and ensure that eligible incarcerated individuals—particularly those who do not require transitional services at Residential Reentry Centers (RRCs)—are transferred to home confinement as soon as statutorily possible. This approach not only honors the bipartisan vision behind the FSA but also reflects the commitment to give second chances to those who have paid their debt and are ready to safely return to their communities.

"President Trump said he would fight for the forgotten men and women of this country, and the First Step Act proved he meant it," said Director Marshall. "Now, we are ensuring that this reform continues to work—not just as a policy, but as a promise to Americans seeking redemption and a path forward."

The new directive outlines the following expectations for staff:

- **Home confinement is a priority** for individuals who are eligible and do not require the structured support of an RRC. RRC placement will be reserved for those with the greatest need.

- **Use of Conditional Placement Dates:** Unit Teams must use FSA and SCA Conditional Placement Dates—based on projected Earned Time Credits (FTCs) expected to earn—to guide prerelease planning and ensure accurate and timely referrals.

- **Clarification of Statutory Authority:** Staff must distinguish between FSA and SCA eligibility criteria, applying time credits appropriately and understanding the limits of each statute, particularly when determining duration of prerelease custody. There is <u>no restriction</u> concerning how many FTCs may be applied toward home confinement.



**Exhibit A**

**U.S. Department of Justice**
**Federal Bureau of Prisons**

FOR IMMEDIATE RELEASE
June 17, 2025

Contact: Office of Public Affairs
202-514-6551

## Bureau of Prisons Issues Directive to Fully Implement First Step Act and Second Chance Act

**WASHINGTON, DC** - In order to restore integrity and fiscal responsibility to the federal prison system, the Bureau of Prisons (BOP) today issued a policy memorandum to staff directing the robust and comprehensive implementation of both the *First Step Act of 2018* and the *Second Chance Act of 2008*—two bipartisan cornerstones of modern criminal justice reform.

"This is the dawn of a new era, one in which the Bureau of Prisons will realize the full potential of the First Step Act and Second Chance Act," said BOP Director William K. Marshall III. "The comprehensive policy outlined today will eliminate barriers to maximize the availability of home confinement to those who qualify for community release under the First Step Act and Second Chance Act. This change in policy will fully operationalize the laws as intended by Congress and ensure a smoother transition for many individuals to return to productive lives after incarceration."

The new policy announced today will have immediate and meaningful benefits. It will:

- **Avoid wasting millions of taxpayer dollars** on unnecessary incarceration,
- **Reduce strain on prison bedspace and staffing**, and
- **Eliminate prolonged and unnecessary burdens on inmates and their families**—particularly those with stable home environments and strong community ties.

The new directive ensures that:

- **FSA Earned Time Credits and SCA eligibility will be treated as cumulative and stackable**, allowing qualified individuals to serve meaningful portions of their sentences in home confinement when appropriate.
- **Conditional Placement Dates**—based on projected credit accrual and statutory timelines—will drive timely referrals, not bureaucratic inertia.
- **Stable housing and community reintegration readiness**, not past employment, will guide placement decisions.
- **RRC bed capacity limitations will not be a barrier to Home Confinement** when an individual is statutorily eligible and appropriate for such placement.

Director Marshall continued: "This action marks a bold shift from years of inaction toward a policy rooted in **public safety, fiscal responsibility, and second chances**. By empowering the agency to

# Home Confinement and Prerelease Placement Updates

**Exhibit B**

## We're Maximizing Pre-Release Custody

The Bureau of Prisons (BOP) is combining or "stacking" two laws—the *First Step Act (FSA)* and the *Second Chance Act (SCA)*—with the goal of maximizing the amount of time eligible individuals can spend in prerelease custody.

## More People Will Go Directly to Home Confinement (HC)

- If you've earned time credits under the FSA and able to apply your credits and/or are eligible under the SCA, you do not require the services of a Residential Reentry Center (RRC), and meet eligibility requirements and are appropriate for HC, you shall be referred directly to HC.
- The goal is to reserve halfway house beds for those who need them most.

## Conditional Placement Dates

- For those who are FSA eligible and able to apply FTCs, your release to the community will be based on a **Conditional Placement Date**, which considers both your earned FSA Time Credits *and* whether you're eligible under the SCA.
- These are **projected dates**, meaning they assume you continue to successfully participate in programming and remain discipline-free.

## If You Qualify, Your Referral Should Not Be Delayed

- If you're eligible under FSA and/or SCA and meet all criteria, **your referral should not be delayed**.
- Staff will refer you based on your **Conditional Placement Date**, even before your credits are fully earned.

## What You Don't Need to Be Referred

- **You do not need to have prior employment** to be considered for home confinement.
- Your **potential** to work may be viewed positively, but it is not required.
- Your release plan, stability, and public safety risks are what matter most.

## The Rules Are Clear

- There is **no limit** on how many FSA credits you can apply toward home confinement.
- If you're only eligible under the SCA, your prerelease time is limited to **up to 12 months in a halfway house or up to 6 months (or 10% of your sentence) in home confinement**—whichever is less.
- For individuals who have earned less than 365 days of FSA Time Credits towards supervised release, staff must also consider adding **up to** an additional 12 months of prerelease time under the SCA, **based on the five-factor review**.
    - The FSA Time Credit Work Sheet for time under the SCA defaults to and will remain "0" until your Unit Team inputs the prerelease time as determined based on the five-factor review. This number will range from 0 to 12 months.

Sara Jenkins
748 Ladner Dr.
Pensacola, FL 32505

RETURN RECEIPT REQUESTED

District Court Clerk
525 Magoffin Ave.
Room 105
El Paso, Texas 79901